# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**ANTHONY LIVELY**                                                                                       **PLAINTIFF**

**V.**                      **CASE NO. 3:18-CV-253-BD**

**ANDREW SAUL, Commissioner**
**Social Security Administration**[1]                                              **DEFENDANT**

## ORDER

### I. Introduction:

On June 21, 2016, Anthony Lively applied for disability benefits, alleging disability beginning on September 27, 2014. (Tr. at 20) His claims were denied both initially and upon reconsideration. *Id.* After a hearing, the Administrative Law Judge (ALJ) denied the application. (Tr. at 26) Mr. Lively requested that the Appeals Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Mr. Lively filed this case seeking judicial review of the decision denying him benefits.[2]

### II. The Commissioner's Decision:

The ALJ found that Mr. Lively had not engaged in substantial gainful activity since the alleged onset date of September 27, 2014. (Tr. at 23) At step two of the five-step analysis, the ALJ found that Mr. Lively had the following severe impairments:

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge.

diabetes mellitus, disorder of the spine, degenerative joint disease, neurocognitive disorder, depression, and anxiety. *Id.*

After finding that Mr. Lively's impairments did not meet or equal a listed impairment (Tr. at 23), the ALJ determined that Mr. Lively had the residual functional capacity (RFC) to perform work at the sedentary level with additional limitations. (Tr. at 26) He should never climb ladders, ropes, or scaffolds, and should never work at unprotected heights, around unprotected, dangerous moving mechanical parts, or in extreme heat. *Id.* He retained the ability to perform simple, routine, and repetitive tasks and had the ability to make simple work-related decisions. *Id.* Supervision would need to be simple, direct, and concrete with only incidental interpersonal contact. *Id.*

The ALJ found that Mr. Lively was unable to perform any past relevant work. (Tr. at 44) At step five, after taking into account Mr. Lively's age, education, work experience and RFC, the ALJ relied on the testimony of a Vocational Expert (VE) to find that Mr. Lively could perform work in the national economy as inspector and assembler. (Tr. at 45) Thus, the ALJ determined that Mr. Lively was not disabled. (Tr. at 26)

### III. Discussion:

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d

922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, merely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

  B. Mr. Lively's Arguments on Appeal

  Mr. Lively maintains that the ALJ's decision to deny benefits is not supported by substantial evidence. He argues that the ALJ failed to give proper weight to medical opinions, failed to fully develop the record, and failed to incorporate all of his limitations when finding his RFC. After reviewing the entire record, the Court concludes that the ALJ did not give due consideration to Mr. Lively's shoulder problems.

  Mr. Lively began having left shoulder pain in 2015. He had limited range of motion and could not lift his left arm above his shoulder without pain. (Tr. at 995) A 2015 MRI of the left shoulder showed fluid within the glenohumeral joint and within the subcoracoid bursa with intrasubstance tear of the supraspinatus tendon and subscapularis tendon. (Tr. at 1666) There was also increased signal intensity at the anterior glenoid labrum, which may indicate a tear. *Id*.

  Mr. Lively began physical therapy because of increasing pain, including pain during the night. (Tr. at 1288-1295) The physical therapist found decreased active range of motion, decreased strength, and increased pain in the left shoulder. *Id*. Mr. Lively

3

discontinued physical therapy because he said the pain was worse after therapy, leaving him unable to lift his arm over his head. *Id*.

Mr. Lively required a second MRI on November 11, 2016. (Tr. at 1315) His pain was progressively worsening. That MRI showed a substance tear involving components of the infraspinatus muscle beneath the coracoid posteriorly, a small amount of fluid collection at the subcoracoid bursa and along the supraspinatus tendon, and a partial substance tear of the supraspinatus tendon just proximate to its insertion. *Id*.

On January 9, 2017, Mr. Lively's orthopedist noted severe pain in the left shoulder, which was worse with overhead activity and internal or external rotation. (Tr. at 1414) Mr. Lively reported that he could not lift with his left shoulder. *Id*. X-rays showed rotator cuff tendonitis. (Tr. at 1415) A third MRI of Mr. Lively's left shoulder, taken in January of 2017, showed capsular thickening in the axillary pouch, but no tears, and an otherwise normal arthrogram. (Tr. at 1469) Mr. Lively was prescribed Flexeril. (Tr. at 1720)

Mr. Lively attempted physical therapy again in February of 2017. Notes from those visits showed decreased upper extremity range-of-motion and muscle strength; and, Mr. Lively complained that he could not reach overhead. (Tr. at 1454) His doctor sent him for an EMG/NCV of the elbow and hand in light of the shoulder pain. Results showed compression of the left ulnar nerve as it coursed around the elbow, and mild compression of the median nerve as it coursed through the carpal tunnel. (Tr. at 1430)

Mr. Lively complained of shoulder pain to his doctor again in July of 2017. (Tr. at 1744) He reported Flexeril had helped but that he still had pain. (Tr. at 1740)

These objective test results lend support to Mr. Lively's complaints of shoulder pain, but they are contradicted by some clinical exam findings of normal motor strength, no tenderness to palpation, and no signs of atrophy—findings that the ALJ relied on. (Tr. at 35-36) The state-agency reviewing physicians found that Mr. Lively had no limitations with respect to his left shoulder (Tr. at 112, 149), but they did not cite to any objective findings related to the shoulder. The ALJ did not discuss the physical therapy notes or two of the three MRIs. (Tr. at 35-36) The ALJ did not question Mr. Lively about his shoulder at the hearing, in spite of his complaints of severe and progressively worsening pain that was not relieved by physical therapy. The ALJ did not order a consultative examination to assess functional abilities, and no such opinion was in the record. Finally, the ALJ did not limit reaching or overhead reaching in the RFC.

Because there was some conflict in the evidence as to the shoulder impairment, and because no treating doctor offered an opinion about functional restrictions, the ALJ should have ordered a consultative examination or, at the least, imposed some limitations in the RFC on Mr. Lively's ability to reach overhead. Where claimants suffer from shoulder impairments with tenderness, progressive pain, nighttime discomfort, and unavailing physical therapy, ALJs normally limit overhead reaching, at least some degree. *See Zeiler v. Barnhart*, 384 F.3d 932 (8th Cir. 2004); *Renstrom v. Astrue*, 680

F.3d 1057 (8th Cir. 2012); *Knox v. Colvin*, 637 Fed. Appx. 965 (8th Cir. 2016). In those cases, objective tests were even relatively normal, unlike the test results in Mr. Lively's case, where three MRI showed abnormalities. But here, the ALJ placed no limitation in assigning Mr. Lively's RFC that relates to his ability to reach overhead.

A claimant's RFC represents the most he can do despite the combined effects of all credible limitations; and it must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

Here, the ALJ did not discuss all of the evidence relating to Mr. Lively's shoulder, and she did not order a consultative examination to flesh out Mr. Lively's functional limitations. Some limitation on Mr. Lively's ability to reach would have been appropriate, as precedent suggests, in the absence of a consultative examination.

**IV. Conclusion:**

For these reasons, the Court concludes that the ALJ's decision is not supported by substantial evidence on the record as a whole. The ALJ did not properly evaluate or develop the evidence related to Mr. Lively's shoulder problems. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED, this 15th day of January, 2020.

_____
UNITED STATES MAGISTRATE JUDGE